# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

Nicole Banks, as Administratrix of  :
The Estate of Justin Cofield,        :
                Plaintiff :
                     :
                     :    Civil Action No. 1:26-cv-00409
            v.           :
                     :
Dauphin County, et al.               :
             Defendants :

---

## REPLY BRIEF IN FURTHER SUPPORT OF THE MOTION TO DISMISS PLAINTIFF'S COMPLAINT UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) ON BEHALF OF DEFENDANTS DAUPHIN COUNTY, WARDEN GREGORY BRIGGS, C.O. EDWIN, AND C.O. FAGAN

Defendants, Dauphin County ("the County"), Warden Gregory Briggs ("Warden Briggs"), C.O. Edwin, and C.O. Fagan,  (referred to herein individually or as "the County Defendants"), by through their counsel, Marshall Dennehey, P.C., respectfully file the following Reply Brief in further support of their Motion to Dismiss Plaintiff's Complaint  (ECF No. 1) for Failure to State a Claim and in response to Plaintiff's Brief in Opposition to the Defendants' Motion to Dismiss Plaintiff's Complaint.  (ECF No. 16).

## I.    INTRODUCTION

Before this Court is the Plaintiff's Complaint (ECF No. 1), the County Defendants' Motion to Dismiss Plaintiff's Complaint (ECF No. 13), and their Brief in Support of the Motion to Dismiss Plaintiff's Complaint (ECF No. 15). Count II

of Plaintiff's Complaint is described as a *Monell* claim against Dauphin County and Warden Briggs for the denial of medical care brought under 42 U.S.C. § 1983. (ECF No. 1 at ¶¶ 40-52). Count III alleges a claim of civil conspiracy under Section 1983 against Warden Briggs, CO Edwin, and CO Fagan. *Id*. at ¶¶ 53-55. Count VI alleges a wrongful death claim under 42 Pa. C.S. § 8301 against the County, Warden Briggs, CO Edwin, and CO Fagan. *Id.* at ¶¶ 69-72. Finally, Count VII alleges a survivor action under 42 Pa.C.S. § 8302 against the County Defendants. *Id*. at ¶¶ 73-76. Plaintiff has failed to plausibly plead any claims against the County Defendants that will allow Plaintiff's claims to survive the County Defendants' Motion to Dismiss.

On May 22, 2026, Plaintiff filed a Brief in Opposition to the County Defendants' Motion to Dismiss Plaintiff's Complaint. (ECF No. 16). The County Defendants timely file their Reply Brief in further support of the Motion to Dismiss Plaintiff's Complaint and in response to Plaintiff's Brief in Opposition.

## II.    <u>RESPONSE TO PLAINTIFF'S ALLEGED ALLEGATIONS RELEVANT TO THIS MOTION.</u>

Section I of Plaintiff's Brief in Opposition restates Plaintiff's allegations against the County Defendants. (ECF No. 16 at 2-5). Out of respect for judicial economy, the County Defendants will rely, for the most part, on their Motion to Dismiss (ECF No. 13) and Brief in Support of Motion to Dismiss (ECF No. 15) wherein the County Defendants offered specific arguments addressing the same

allegations raised by Plaintiff in her Brief in Opposition. However, the County Defendants will address the deficiencies in Plaintiff's claims that have not been cured or, in some cases, addressed, in the Plaintiff's Brief in Opposition.

First, Plaintiff revisits her claim that Warden Briggs condoned and acquiesced in the adoption of a policy by PrimeCare to discontinue COVID testing on a regular basis and to follow a practice of not testing inmates for COVID in order to increase PrimeCare's profits. (ECF No. 16 at 3, citing ECF No. 1 at ¶¶ 25, 48). There is no dispute that Warden Briggs is not a medically trained professional. Neither Plaintiff's Complaint nor Plaintiff's Brief in Opposition contain factual allegations that PrimeCare was required to continue to test inmates for COVID in August 2022, when Mr. Cofield was initially incarcerated at the Dauphin County Prison ("DCP"). Likewise, neither Plaintiff's Complaint nor Plaintiff's Brief in Opposition alleges that inmates at DCP complained of COVID symptoms or were later found to have tested positive for the COVID virus. Instead, Plaintiff alleges only that in November 2023 "most" inmates on Mr. Cofield's cell block had become "very sick." (ECF No. 16 at 3, citing ECF No. 1 at ¶14). Plaintiff again failed to explain what "very sick" entails. Likewise, neither Plaintiff's Complaint nor Plaintiff's Brief in Opposition claim that Mr. Cofield was positive for the COVID virus. Instead, both Plaintiff's Complaint and Brief in Opposition rely on a single allegation: "he had COVID in his system." (ECF No. 1 at ¶ 27; ECF No. 16 at 4). These are the types of

3

allegations, suggesting the possibility that the County Defendants were liable for Mr. Cofield's death, that this Court does not have to accept as true when Plaintiff's allegations are supported by mere conclusory statements. *Cal. Pub. Employees' Ret. Sys. V. Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004) (citing *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).

Next, Plaintiff acknowledges in both her Complaint and her Brief in Opposition that when Mr. Cofield allegedly "became ill" in January 2024, he was provided sinus and flu medication. (ECF No. 16 at 3, citing ECF No. 1 at ¶¶ 16, 18).[1]  Accordingly,  the County Defendants maintain that any argument that Mr. Cofield was denied medical care is misplaced; instead, Plaintiff, while acknowledging that Mr. Cofield received medical care, appears to take issue with the sufficiency of the medical care he received.  Further, while Plaintiff argues again that PrimeCare failed to perform diagnostic testing on Mr. Cofield (ECF No. 16 at 4), Plaintiff does not offer any factual averments (beyond conclusory statements that Warden Briggs allegedly "consented to" PrimeCare's decision to limit or terminate COVID testing for inmates in August 2022 and allegedly worked to increase PrimeCare's profit margin) to support a plausible argument that Warden Briggs, a non-medically trained professional, knew that Mr. Cofield had a serious medical

---

[1] The County Defendants note that Plaintiff describes Mr. Cofield as "ill" but describes him as "very ill" when alleging that C.O. Fagan and C.O. Edwin, non-medically trained corrections officers,  "were aware" that Mr. Cofield was "very ill."

need (which Plaintiff also fails to plausibly plead) and acted with deliberate indifference to that need.

## III.    RESPONSE TO PLAINTIFF'S ARGUMENTS

    a. <u>Plaintiff does not address the County Defendants' arguments related to Plaintiff's *Monell* claim against Warden Briggs in his personal capacity or Plaintiff's failure to plausibly plead a Section 1983 conspiracy against Warden Briggs, CO Edwin, and/or CO Fagan.</u>

The County Defendants argued that Plaintiff improperly alleged a *Monell* claim against Warden Briggs in his personal capacity. (*See*, ECF No. 15, at 12-13, citing *Mervilus v. Union County*, 73 F.4th 185, 197 n.5 (3d Cir. 2023). In her Brief in Opposition, Plaintiff did not respond to or mention the County Defendants' argument. Likewise, the County Defendants argued that Plaintiff failed to allege the facts necessary to advance a Section 1983 conspiracy claim against Warden Briggs, CO Edwin, or CO Fagan. (ECF No. 15 at 16-18). In her Brief in Opposition, Plaintiff did not respond to or mention the County Defendants' argument. By failing to respond to the County Defendants' substantive arguments to dismiss these particular claims, Plaintiff has waived or abandoned her claims. The filing of a brief in opposition to a motion to dismiss that fails to respond to a substantive argument to dismiss a particular claim results in the waiver or abandonment of that claim. *See Dreibelbis v. Scholton*, 274 Fed. App'x 183, 185 (3d Cir. 2008) (affirming district court's finding of waiver as to an argument where plaintiff had opportunity to address it in [her] opposition brief but failed to do so); *D'Angio v. Borough of*

*Nescopeck*, 34 F. Supp. 2d 256, 265 (M.D. Pa. 1999).  Accordingly, Plaintiff has waived these claims against Warden Briggs, CO Edwin, and CO Fagan.

      b.   <u>Plaintiff's reliance on *Atkinson* and *Kedra* is not persuasive.</u>

Plaintiff argues that by describing Mr. Cofield as "ill" or "very ill" without describing symptoms that non-medically trained corrections officers "had been aware" that Mr. Cofield was allegedly, "very ill."  Plaintiff relies on *Atkinson v. Taylor,* 316 F.3d 257 (3d Cir. 2003) for the proposition that a medical need is of a serious nature if "unnecessary and wanton infliction of pain" results as a consequence of denial or delay in the provision of adequate medical care.  (ECF No. 16 at 7).  Initially, the County Defendants note that *Atkinson* examined the appellee's claim under the Eighth Amendment cruel and unusual punishment standard, not a claim for the alleged denial of adequate medical care.  In *Atkinson*, the appellee, an inmate at the Delaware Department of Correction, alleged civil rights infractions under 42 U.S.C. § 1983 claiming the appellants violated his Eighth Amendment right to be free from cruel and unusual punishment by exposing him to environmental tobacco smoke ("ETS") that created a serious medical need and posed an unreasonable risk of harm.  *Id.* at 259.  The appellants argued that they were entitled to qualified immunity on the ETS claim.  In examining the qualified immunity argument, the Third Circuit, examining a specific issue, ETS, noted that "almost every Court of Appeals that has addressed this issue has recognized that a prisoner's

6

right to be free from levels of ETS that pose an unreasonable risk of future harm was clearly established." *Id*. at 263.   Examining the appellee's argument related to future harm, the Third Circuit examined the issue of whether prison officials knew of and disregarded an excessive risk of health or safety. *Id.* at 265.  Acknowledging that the Court defined a serious medical need as diagnosed by a physician as requiring treatment, the Court recognized that if unnecessary and wanton infliction of pain is caused by the denial or delay in the provision of adequate medical care, the medical need is serious. *Id*. at 267.   While Plaintiff relies on this limited portion of the *Atkinson* decision, she does not discuss the Third Circuit's analysis of examples of "unnecessary and wanton infliction of pain."  The Court referenced symptoms such as severe headaches, dizziness, nausea, vomiting, and breathing difficulties stemming from the exposure to ETS as constituting a serious medical need. *Atkinson*, 316 F.3d at 266, *citing Weaver v. Clarke*, 45 F.3d 1253, 1254 (8th Cir. 1995).  Here, unlike *Weaver*, Plaintiff has not explained the symptoms that Mr. Cofield experienced and which should have caused non-medically trained corrections officers to recognize that he was "very ill."  In *Atkinson*, the plaintiff alleged in his amended complaint that due to the deliberate indifference to his exposure to constant smoking in his cell, he suffered nausea, an inability to eat, headaches, chest pains, difficulty breathing, numbness in is limbs, teary eyes, itching, burning skin, dizziness, a sore throat, coughing and production of sputum.

*Id.* at 268.  Therefore, the Third Circuit had factual averments of a recognized serious medical condition, prolonged exposure to ETS, and a list of symptoms alleged by the plaintiff supporting his claim of deliberate indifference.  Finally, in *Atkinson*, the appellee alleged that he tried to seek help from the prison infirmary and, that after telling prison officials about his sensitivity to ETS, no changes were made in his housing conditions, which the Third Circuit concluded was evidence demonstrating deliberate indifference on the part of prison officials.  *Id.* at 269.  Plaintiff has not alleged any similar action on the part of Warden Briggs or COs Edwin and Fagan.

Plaintiff's reliance on *Kedra v. Schroeter*, 876 F.3d 424 (3d Cir. 2017) is equally unpersuasive.  *Kedra* involved the death of a State Trooper shot and killed by his instructor during firearms training.  *Id.* at 431.  Unlike this case, the Third Circuit examined the issue of qualified immunity in a state-created danger claim, not a case involving alleged inadequate medical care at a prison.  *Id.* at 437.  Because the appellant alleged that the supervisor (in failing to recognize a gun was loaded) had the opportunity to exercise "unhurried judgment", the Court concluded appellant was required to plead facts in her complaint supporting the inference that the supervisor acted with deliberate indifference.  *Id.*  Specifically, the appellant was required to plead facts in her complaint that the supervisor acted with a "conscious disregard of a substantial risk of serious harm" or "willful disregard" demonstrated by actions that "evince a willingness to ignore a foreseeable danger or risk."  *Id.*

8

(Additional citations omitted). Although not discussed by Plaintiff, the Third Circuit examined, in the context of a qualified immunity analysis, whether the complaint pleaded deliberate indifference under a subjective test or an objective test. *Id*. at 440. The Court stated that the risk was obvious in pointing a gun at a defenseless person and pulling the trigger without undertaking any safety check along with the "many other" allegations in the complaint reflecting the supervisor's conscious disregard of a substantial risk of serious harm. *Id*. at 443. Plaintiff has not alleged any factual averments to suggest that the alleged failure of Warden Briggs in "acquiescing" to PrimeCare's medical decision to allegedly not test inmates for COVID or corrections officers failing to recognize that an inmate was "ill" carry the same obvious risk as pointing a gun at a defenseless person and pulling the trigger. *Id*. at 444. Further, the Third Circuit questioned the District Court's examination of the supervisors training and experience relevant to assessing his state of mind or that his training and experience made it more or less possible that his conduct carried a substantial risk of serious harm. *Id*. at 445. This Court should not have to struggle with those questions here – Plaintiff continues to argue through a conclusory statement that COs Edwin and Fagan, because they were assigned to Mr. Cofield's cell block, should have been aware for several weeks that he was "very ill." (ECF No. 16 at 3). Neither in Plaintiff's Complaint nor her Brief in Opposition does she offer any supportive factual averments to plausibly plead that corrections officers

"should have been aware" that Mr. Cofield was "very ill" when a medical provider concluded that over the counter medication was sufficient to treat Mr. Cofield's complaints.

    c.  <u>A conclusory statement is not a specific fact.</u>

To satisfy her burden of plausibly pleading a delay in medical treatment for non-medical reasons, Plaintiff again alleges that Warden Briggs, to save PrimeCare money, acquiesced to PrimeCare's decision to allegedly stop COVID testing in the inmate population.  (ECF No. 16 at 7).  Plaintiff alleges that the allegation against Warden Briggs is not a legal conclusion but is a "specific fact."  *Id*. at 8.  The Plaintiff's argument speaks for itself.  Plaintiff acknowledges her burden to plausibly plead a "non-medical reason" to satisfy an element of the deliberate indifference analysis. (ECF No. 16 at 7-8).  Without offering more than a conclusory allegation, Plaintiff claims that Warden Briggs "consented" to a PrimeCare policy "with the purpose of increasing the corporate profits of the County's contracted medical provider." (ECF No. 16 at 7).  Plaintiff's allegation, made in an attempt to satisfy a necessary element of a deliberate indifference claim, is analogous to a plaintiff claiming the existence of a conspiracy between corrections officers because they work at the same facility.  Without including specific facts to suggest when the conspiracy was made, the parties to the agreement, and the period and object of the conspiracy, such a claim would fail.  That is what Plaintiff attempts, but fails, to

plead here – that Warden Briggs somehow consented with a PrimeCare plan to increase corporate profits by reducing or eliminating COVID tests in 2022. Again, this type of general allegation, without more, is the type of conclusory statement, offered only to satisfy a necessary element of a claim, that this Court is not required to accept as true. *Cal. Pub. Employees' Ret. Sys. V. Chubb Corp*., 394 F.3d 126, 143 (3d Cir. 2004) (citing *Morse v. Lower Merion Sch. Dist*., 132 F.3d 902, 906 (3d Cir. 1997)).

    d.  <u>Plaintiff failed to plausibly plead an obvious risk of harm.</u>

Plaintiff claims that the risk of harm to Mr. Cofield was so obvious that the County and its non-medically trained corrections officers were deliberately indifferent because they should have known of the risk. (ECF No. 16 at 9). In support of her claim that the County acted with deliberate indifference, Plaintiff relies on *Sanford v. Stiles*[2] to support her claim. Plaintiff's reliance on *Sanford* is misplaced. *Sanford*, unlike this case, examined a state-created danger claim resulting from the tragic suicide of a student following two visits to his guidance counselor. The issues and analysis in *Sanford* are not applicable to the issues before this Court. First, Plaintiff suggests that the Third Circuit articulated that "deliberate indifference might exist without actual knowledge of a risk of harm when the risk is so obvious that it should be known." (ECF No. 16 at 9). The County Defendants

---

[2] 455 F.3d 298, 309 (3d Cir. 2006).

respectfully disagree with Plaintiff's representation of the language from *Sanford*. Specifically, the Court did not address the issue of deliberate indifference. On the contrary, the Court stated,

> Though we need not decide the issue here, we note the possibility that deliberate indifference **might** exist with actual knowledge of a risk of harm when the risk is so obvious that it should be known.

*Sanford,* 455 F.3d at 309.  (Emphasis added).  In a footnote, the Court decided to "leave to another day" the question of whether actual knowledge is required to meet the culpability requirement in *state-created danger claims*.  *Id*. at 309, fn.13. (Emphasis added).  The Court went on to reiterate that, generally, a municipality may be held liable for a constitutional violation arising from a policy or custom if it demonstrates indifference to a known or obvious consequence.  *Id*.  (Emphasis in original).  The Court cited *A.M. v. Luzerne County Juvenile Det. Ctr.*, 372 F.3d 572, 580 (3d Cir. 2004), wherein the Third Circuit found no error in the District Court's granting of summary judgment in favor of a physician when the evidence revealed that the physician, a general practitioner, was not asked or required to conduct a psychiatric evaluation.  The Court concluded that, following a review of the record, the appellant failed to present sufficient facts that any failure of the general physician with respect to his duties rose to the level of deliberate indifference.  *A.M*. 372 F.3d at 580.  Plaintiff has not offered sufficient factual averments to suggest that the County had either actual knowledge of Mr. Cofield's alleged serious medical

12

condition, described as Mr. Cofield only as "sick" or "very ill."  Had Warden Briggs "consented" to the alleged decision by PrimeCare to reduce or eliminate COVID testing at DCP in August 2022, Plaintiff has failed to plausibly plead that Warden Briggs' alleged action rises to the level of deliberate indifference.

    e.   <u>Plaintiff misunderstands the Defendants' reliance on *Thomas*.</u>

Plaintiff maintains that the County Defendants rely on the rule that a pattern of violations is ordinarily required to show deliberate indifference.  (ECF No. 16 at 10).  Plaintiff attempts to apply the holding in *Thomas v. Cumberland Cnty.*[3] to her claims that given the alleged crowded and enclosed physical environment at DCP, it is a reasonable inference that inmates would likely be exposed to COVID.  *Id*. at 11. First, in their Brief in Support, the County Defendants explained that, because Plaintiff alleged PrimeCare failed to adequately test, hire, train, and supervise its medical staff, any attempt to link the County to this alleged "failure to" claim fails. (ECF No. 15 at 19-20, discussing ECF No. 1 at ¶ 50(iii)).  In *Thomas*, discussing a "failure to" claim,  the Third Circuit clarified that a pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of "failure to" claims.  *Thomas,* 749 F.3d 217, 223 (3d Cir. 2014).  Further, Plaintiff's attempt to equate the *Thomas* Court's finding that the frequency of fights and the volatile nature of a prison makes clear the need for

---

[3] 749 F.3d 217 (3d Cir. 2014)

corrections officers to be trained in de-escalation and intervention techniques with a claim that the County was somehow responsible for training PrimeCare's medical staff should be rejected as inconsistent with the Third Circuit's analysis in *Thomas*. If Plaintiff is suggesting that she is attempting to plead a single-incident theory, she has failed to plausibly plead that alleged circumstances involving Mr. Cofield's death that the situation was likely to recur and that non-medically trained corrections officers lacked specific tools to handle such a predictable occurrence.

## IV.    CONCLUSION

For the reasons set forth herein as well as set forth in the County Defendants' Motion to Dismiss Plaintiff's Complaint and their Brief in Support of their Motion to Dismiss Plaintiff's Complaint for failure to state a claim, the County's Motion to Dismiss should be granted.

Respectfully submitted,

**MARSHALL DENNEHEY, P.C .**

By:  s/ *Andrew W. Norfleet*
Andew W. Norfleet, Esquire
Attorney No. PA 83894
200 Corporate Circle Drive, Ste. 300
DATE:  June 5, 2026       Camp Hill, PA 17011
awnorfleet@mdwcg.com
(717) 651-3529
Attorney for Dauphin County Defendants

14

# CERTIFICATE OF SERVICE

I, Aimee L. Paukovits, an employee with the law firm Marshall Dennehey, P.C., do hereby certify that on this 5th day of June 2026, I served a true and correct copy of the foregoing Reply Brief in Support of the Motion to Dismiss Plaintiff's Complaint via ECF on counsel of record.

/s/ *Aimee L. Paukovits*
Aimee L. Paukovits,
Administrative Assistant

This document has also been electronically filed and is available for viewing and downloading from the ECF system.